IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DOROTHY S. GORDON,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-0113

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION .................................. 2

II.   PRINCIPLES OF REVIEW ........................... 2

III.  FACTS ........................................... 4
    A.   Gordon's Education and Employment Background ............. 4
    B.   Vocational Expert's Testimony from the Administrative Hearing .... 4
    C.   Gordon's Medical History ............................ 5

IV.  CONCLUSIONS OF LAW ............................ 10
    A.   ALJ's Disability Determination ....................... 10
    B.   Objections Raised By Claimant ....................... 12
        1.   RFC Assessment ............................ 12
        2.   Hypothetical Question ......................... 16

V.   CONCLUSION ................................... 17

VI.  ORDER ........................................ 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Dorothy S. Gordon on October 21, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Gordon asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Gordon requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

2

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even

3

though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Gordon's Education and Employment Background

Gordon was born in 1967. She is a high school graduate. She attended college at various times in her life, but has not completed a college degree due to both depression and physical health problems.[1] In the past, Gordon worked as a truck driver, home health aide, and cashier.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual with the ability to:

> occasionally lift [and] carry 20 pounds, frequently 10, stand, walk at least two hours in an eight hour work day, sit with normal breaks with a total of about six hours in an eight hour work day, occasionally climbing ramps, stairs, balancing, stooping, kneeling, crouching, never climbing ladder, rope, scaffolds or crawling, frequently handling and fingering, able to shift postural positions without leaving the work place and with no loss of productivity, limited to simple, routine, tasks.

(Administrative Record at 52.) The vocational expert testified that under such limitations, Gordon could not perform her past relevant work. The vocational expert testified, however, that Gordon could perform the following jobs: (1) document preparer (700 positions in Iowa and 64,000 positions in the nation), (2) touch-up screener (760 positions in Iowa and 50,000 positions in the nation), and (3) addresser (200 positions in Iowa and 24,000 positions in the nation). The ALJ presented the vocational expert with an additional hypothetical limiting the individual to sedentary work with:

---

[1] *See* Administrative Record at 341. However, at other places in the record it suggests that Gordon has a BA degree in art. *See Id.* at 382.

4

> climbing, ramps [and] stairs, balancing, stooping, kneeling, crouching [] occasionally, never climbing ladder, ropes, scaffolds, crawling, frequently handling and fingering bilaterally, able to shift postural positions without leaving the work place and with no loss of productivity and this could be accomplished during the break periods and/or lunch, limited to simple, routine tasks, no more than at a regular pace, no close attention to detail.

(Administrative Record at 53-54.) The vocational expert testified that her answer to this hypothetical would be the same as her answer to the first hypothetical. Thus, Gordon could not perform her past relevant work, but she could perform the jobs of document preparer, touch-up screener, and addresser.

### C. Gordon's Medical History

On May 20, 2010, Dr. Donald Shumate, D.O., reviewed Gordon's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Gordon. Dr. Shumate determined that Gordon could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Shumate also determined that Gordon could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but never crawl. Additionally, Dr. Shumate found that Gordon should avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, and poor ventilation. Dr. Shumate found no manipulative, visual, or communicative limitations. Dr. Shumate concluded that:

> [Gordon] has severe [medically determinable impairments] that include morbid obesity with BMI 53.2, fibromyalgia, and asthma. She has [been] treated [for] GERD which is non severe regarding functional limitations. She was diagnosed

> with parotitis and lymphadenopathy presumed to be reactive
> adenopathy and these impairments are non severe. . . .
>
> The preponderance of evidence indicates [Gordon] is capable
> of sustaining a level of activity as noted in the RFC.

(Administrative Record at 337.)

On May 24, 2010, DDS referred Gordon to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. In reviewing Gordon's medical history, Dr. Stientjes noted that Gordon had surgery for carpal tunnel syndrome in the past, and claimed asthma, fibromyalgia, and other physical problems. Upon examination, Dr. Stientjes noted that Gordon:

> endorsed severe symptoms of Major Depressive Disorder,
> claiming her future is somewhat hopeless, feeling guilty,
> blaming herself for her problems, and lacking interest in
> anything. . . . She also claimed anxiety symptoms, fearing
> bad things will happen, loss of control, inability to relax, and
> consistent indigestion.

(Administrative Record at 342.) Dr. Stientjes determined that Gordon has the following work limitations:

> [Gordon] can understand and remember simple oral and
> written instructions. Carryover from one day to the next
> should be adequate although she will complain of poor stamina
> and inability to sustain activity over time. Interactions with
> others are generally appropriate. Safety judgment is believed
> intact. She will expect more than typical concession to her
> health problems in the work environment.

(Administrative Record at 343.) Dr. Stientjes diagnosed Gordon with major depressive disorder, dependent personality traits, and obesity. Dr. Stientjes opined that Gordon's "[p]rospects for sustained gainful employment are marginal."[2]

---

[2] Administrative Record at 343.

On June 2, 2010, Dr. Carole Kazmierski, Ph.D., reviewed Gordon's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Gordon. On the Psychiatric Review Technique assessment, Dr. Kazmierski diagnosed Gordon with major depressive disorder and dependent personality traits. Dr. Kazmierski determined that Gordon had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kazmierski determined that Gordon was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Kazmierski concluded that:

> [Gordon's] mental impairments also impact [her] functioning, but by and large, do not severely restrict her [activities of daily living]. [Gordon] is able to relate appropriately to others, though the examining psychologist expressed some concern about [her] reciprocity and sensitivity to others needs in personal interactions. [Gordon's] concentration is likely to be somewhat variable, depending on her affective state and her level of physical discomfort. [She] can understand and remember instructions, many at the detailed level. While her pace may be somewhat slower due to fatigue and depression, she can perform a range of simple, routine tasks that are within her physical capabilities.

(Administrative Record at 360-361.)

On December 15, 2010, at the request of DDS, Gordon met with Dr. Robin L. Epp, M.D., for a consultative examination. In reviewing her medical history, Dr. Epp noted

that Gordon was diagnosed with fibromyalgia in the spring of 2010. She described pain in her shoulders, knees, ankles, and back. At its best, she rated her pain as 5 out of 10 with 10 being the most severe pain. On average, she rated her pain as 7 out of 10; and at its worst, she rated her pain as 9 out of 10. Dr. Epp noted that "[e]xercise, standing, sitting too long increase her pain, while pain relievers decrease her pain."[3] Dr. Epp also noted a diagnosis of carpal tunnel syndrome affecting both of Gordon's wrists. Dr. Epp indicated that she wears braces at night which help her pain. Gordon informed Dr. Epp that "[u]sing her hands, writing, typing, grasping or carrying increase her symptoms, while doing less of these activities decrease her symptoms."[4] Lastly, Dr. Epp noted Gordon's difficulty with asthma. Gordon's primary symptom associated with asthma is difficulty breathing, which is triggered by exercise and environmental factors. Upon examination, Dr. Epp placed the following restrictions on Gordon's functional abilities: (1) Gordon is able to lift, push, pull, and carry 20 pounds occasionally; (2) she can occasionally stand, walk, stoop, bend, crawl, climb stairs, and use her upper extremity; and (3) she can rarely kneel or grip/grasp. Dr. Epp found that Gordon had no restrictions in sitting or using her lower extremities.

On December 22, 2010, Dr. John May, M.D., reviewed Gordon's medical records and provided DDS with a physical RFC assessment for Gordon. Dr. May determined that Gordon could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May also determined that Gordon could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but never crawl. Dr. May further determined that due to her carpal tunnel syndrome, Gordon

---

[3] Administrative Record at 381.

[4] *Id.*

should be limited to frequent handling and fingering bilaterally. Dr. May opined that Gordon should avoid "constant repetitive fine motor tasks."[5] Additionally, Dr. May found that Gordon should avoid concentrated exposure to extreme cold, vibration, and fumes, odors, dusts, gases, and poor ventilation. Dr. May found no visual or communicative limitations.

On November 21, 2011, at the request of Gordon's attorney, Rosemary Rhode, LISW, Gordon's treating therapist, filled out a "Mental Impairment Questionnaire" and provided Gordon's attorney with a letter offering various opinions. Rhode diagnosed Gordon with history of major depressive disorder, generalized anxiety disorder, and adjustment disorder. Rhode identified the following signs and symptoms for Gordon: decreased energy, past thoughts of suicide, feelings of guilt and worthlessness, generalized persistent anxiety, difficulty thinking and concentrating, PTSD, emotional withdrawal and isolation, and sleep disturbance.

In her letter, Rhode indicated that Gordon's anxiety difficulties were most prevalent and debilitating. Rhode stated that Gordon's symptoms at times compromise her ability to carry out daily activities, and cause her to isolate herself from other people. Rhode concluded that:

> During the course of treatment [Gordon] has experienced some relief from anxiety symptoms and some success in managing those symptoms. The symptoms seemed significantly impacted by life events, i.e., when new worries arose, her anxiety increased, when those worries were alleviated her anxiety symptoms decreased. I do believe she has a baseline anxiety level that is higher than the norm, subsequently the anxiety symptoms can be easily triggered.

(Administrative Record at 405.)

---

[5] Administrative Record at 393.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Gordon is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

10

> fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Gordon had not engaged in substantial gainful activity since March 12, 2010. At the second step, the ALJ concluded from the medical evidence that Gordon has the following severe impairments: fibromyalgia, carpal tunnel syndrome, obesity, mild spondylosis of the cervical spine, asthma, obstructive sleep apnea, GERD, major depressive disorder, and dependent personality traits. At the third step, the ALJ found that Gordon did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Gordon's RFC as follows:

> [Gordon] has the residual functional capacity to perform
> sedentary work . . . in that [she] can occasionally climb
> ramp/stairs, balance, stoop, kneel, and crouch. [Gordon] can
> never climb ladder/rope/scaffolds or crawl. She can
> frequently hand/finger bilaterally and should be able to shift
> postural position without leaving the work place and with no
> lost [sic] of productivity and can be accomplished during break
> periods and/or lunch. [Gordon] is limited to simple, routine
> tasks, work at no more than a regular pace, and can have no
> close attention to detail. She should avoid concentrated
> exposure to extreme cold, fumes, odors [] and vibration.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Gordon could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Gordon could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Gordon was not disabled.

### B. *Objections Raised By Claimant*

Gordon argues that the ALJ erred in two respects. First, Gordon argues that the ALJ's RFC assessment is flawed. Second, Gordon argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing. Gordon concludes that this matter should be remanded for (1) a proper RFC assessment, and (2) to allow the ALJ to provide the vocational expert with a proper hypothetical question.

#### 1. *RFC Assessment*

Gordon argues that ALJ's RFC assessment is flawed. Specifically, Gordon argues that the ALJ failed to properly consider her limitations with regard to reaching, handling, and fingering due to her carpal tunnel syndrome. Similarly, Gordon asserts that the ALJ failed to properly consider her limitations in the area of social functioning. Gordon concludes that this matter should be remanded for further consideration of her RFC assessment.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Gordon's RFC, the ALJ thoroughly addressed and considered her medical history, particularly her obesity and the opinions of various treating, examining, and non-examining doctors and other sources.[6] For example, the ALJ thoroughly discussed Gordon's difficulties with carpal tunnel syndrome. The ALJ noted that Gordon was "prescribed wrist splints, which she indicated were somewhat helpful."[7] The ALJ also discussed the opinions of Dr. Epp and noted that:

> Examination findings indicate that [Gordon's] grip strengths were strong and equal. She did have positive Phalen test and Tinel's signs, consistent with carpal tunnel syndrome. However, she was able to make a fist, extend her hand and oppose fingers. In turn, range of motion was normal in all joints tested, upper and lower extremity strength was 5/5, and she walked with a normal gait.

(Administrative Record at 21.) The ALJ concluded that "[d]espite diagnosed carpal tunnel syndrome, [Gordon] has normal strength and function of her hands. She would be capable of frequent handling and fingering bilaterally. She should avoid constant repetitive fine motor tasks."[8] Similarly, with regard to her social functioning, the ALJ acknowledged that Gordon's mental impairments "impact [her] functioning, but by and large, do not severely restrict her activities of daily living."[9] Specifically, the ALJ noted that "[t]he record shows she is able to relate appropriately to others, though the examining psychologist expressed some concern about [Gordon's] reciprocity and sensitivity to

---

[6] *See* Administrative Record at 19-25 (providing thorough discussion of Gordon's medical history, including addressing Gordon's obesity and considering the opinions of treating, examining, and non-examining medical sources).

[7] Administrative Record at 21.

[8] Administrative Record at 24.

[9] *Id.* at 23.

others's needs in personal interactions."[10] The examining psychologist also opined that Gordon's interactions with others is "generally appropriate."[11] The ALJ also pointed out that both the examining psychologist and her treating therapist assessed GAF scores for Gordon that indicated mild-moderate symptoms or difficulty in social, occupational, or school settings.[12] Finally, in making his RFC determination, the ALJ concluded that:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Gordon's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Gordon's] capacities that were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 25.)

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Gordon's medical records, observations of treating physicians, and Gordon's own description of her limitations in making the ALJ's RFC assessment for Gordon.[13] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Gordon's assertion that

---

[10] *Id.* at 23.

[11] *Id.* at 343.

[12] *Id.* at 21 (examining source); 25 (treating source)

[13] *See id.* at 19-25 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

### 2. *Hypothetical Question*

Gordon argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Gordon also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Gordon maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Gordon's testimony in determining Gordon's impairments.[14] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as

---

[14] *See* Administrative Record at 19-25.

a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. The Court also finds that the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 27th day of August, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA